**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2671-24

ASPEN RIVERPARK
APARTMENTS,

    Plaintiff-Respondent,

v.

NADIA HUGHES,

    Defendant-Appellant.

_____

Argued January 22, 2026 – Decided August 5, 2026

Before Judges Currier, Berdote Byrne and Jablonski.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. LT-000790-25.

Anthony D. Kershaw argued the cause for appellant (Essex Newark Legal Services, attorneys; Felipe Chavana, Anthony D. Kershaw and Hazel O. Ortiz, on the briefs).

Nicholas Mesarick argued the cause for respondent (Ehrlich, Petriello, Gudin, Plaza & Reed, PC, attorneys; Nicholas Mesarick, on the brief).

PER CURIAM

Defendant Nadia Hughes appeals a March 20, 2025 default judgment of possession, an April 16, 2025 order for orderly removal, and a May 1, 2025 order denying her order to show cause. After a detailed review of the record and the parties' arguments, we affirm.

Plaintiff Aspen Riverpark Apartments ("Aspen") owns property located in Newark. On August 4, 2023, defendant leased an apartment in Aspen's complex and received a rent subsidy under the United States Bureau of Housing and Urban Development ("HUD") Section 8 regulations, 24 C.F.R. §§ 982.1 to 982.643. Her lease expired on August 31, 2024.

Under the HUD guidelines and her lease, defendant was required to recertify her eligibility for a subsidy annually by providing information relating to her income and expenses, and the individuals occupying the apartment. If defendant did not submit the required certification information by July 31, she risked losing her subsidy and Aspen could impose penalties including requiring her to pay the HUD-approved market rent for the unit.

Defendant indicated she provided "all of the required documentation to her landlord for purposes of her annual recertification." Aspen disagreed.

A-2671-24

In an October 29, 2024 letter, Aspen's property manager wrote to defendant to notify her

> that on the basis of our recent review of your income and family composition, your rent has been adjusted to $0.00. This new rent is effective beginning September 1, 2024.
>
> This notification amends paragraph [three] of your lease agreement, which sets forth the amount of rent you pay per month.

On November 7, 2024, Aspen served defendant with a "Thirty Day Notice to Pay Rent or Quit." In it, Aspen asserted $3,544 was owed for a portion of rent due for September 2024, October 2024, and November 2024. The notice required defendant to pay the rent arrears or to leave the premises within thirty days of the service of the notice. Defendant remained in the property, and in January 2025, Aspen filed an eviction complaint alleging she owed $7,062 for rent from October 2024 through January 2025 in the amount of $1,759 per month. Trial was scheduled for February 25, 2025.

Defendant represented herself at trial. After she checked in at the calendar call, she spoke with Aspen's representatives about a possible resolution to the matter. They were, however, unable to resolve the case. Defendant was assigned to a judge for trial. When she reported to the assigned courtroom, defendant testified she requested, and was granted, permission by

3

the trial judge to leave the courthouse to attend to an urgent personal matter. A default judgment of possession was entered on March 20, 2025, in the amount of $10,580, and a warrant of removal issued.

Defendant moved for post-judgment relief and to prevent the lockout. On the April 16, 2025 return date, the court took testimony from Aspen's representative, Christina Cintron. Cintron stated because defendant had not provided the necessary information regarding the individuals residing in her apartment by the July 31 deadline, defendant's subsidy was terminated, and she was required to pay market rent if she wished to remain in the apartment.

The court specifically questioned Cintron about Aspen's October 29, 2024 letter stating defendant's rent obligation was set at zero. Cintron explained her uncertainty as to how that letter was generated because these letters typically accompany an annual recertification lease. Aspen's counsel also added Aspen's records did not show the issuance of the August 29, 2024 letter and emphasized that, regardless of it, defendant was served a termination notice and a notice to pay or quit, which outlined her rent obligations after her rent was set at the market rate because of her non-compliance with the HUD Section 8 requirements. Defendant stated she never received those notices, nor did she ever receive a notice that her subsidy was terminated.

4

The court denied defendant's order to show cause noting the only recourse defendant had was to pay the rent she owed. The court permitted defendant to vacate the apartment under an order for orderly removal.

Defendant retained counsel who applied again for relief from the judgment. Counsel argued the required HUD notices reminding defendant of her obligation to recertify should have been attached to the complaint pursuant to Rule 6:3-4(d) since Aspen ostensibly sought possession of the apartment because defendant failed to recertify her subsidy eligibility. Aspen's counsel argued Aspen was not seeking possession of the apartment because of defendant's failure to recertify for her subsidy, which would require a notice to cease and a notice to quit as prerequisites. Instead, counsel asserted Aspen sought possession for non-payment of rent that accrued after defendant missed her recertification deadline.

The court heard argument regarding this distinction and took testimony on the limited issue as to whether Aspen sent defendant the recertification reminders.

Defendant acknowledged she was aware of the "anniversary date to recertify" as August 7, 2024. She also testified she knew she was required to recertify each year. However, defendant indicated she provided this

A-2671-24

information well before the July 31 deadline. She specifically noted she did not receive any reminder notices that were required by HUD in April, May, or June. Her position was that no reminder notices were necessary because she had provided the required information.

In opposition, Cintron testified to what Aspen's counsel designated as P-1. She identified it as a notice generated from the "HUD system when the tenant doesn't come down to recertify on time." Cintron asserts this notice, dated August 21, 2024, was served upon defendant personally.[1] It read:

> [T]his is to notify you that on the basis of your recent review of your income and family composition, your rent has been adjusted to $1,759. The new rent is effective August 1, 2024.
>
> This notification amends Paragraph [three] of your lease agreement, which sets forth the amount of rent you pay each month.
>
> Please visit the office within seven days of receiving a copy of the HUD 50059.

On cross-examination, Cintron acknowledged she sent reminder notices to defendant and detailed the dates of them and the methods by which they were served. Neither counsel moved any of the documents into evidence.

---

[1] We have not been provided with P-1.

A-2671-24

The judge informed the parties she intended to convert defendant's order to show cause into a "motion to vacate judgment based on the notice issue" and invited counsels' argument as to that issue.

The judge then denied the application, holding:

> [The court] took testimony, and specifically narrowly tailored to the issue regarding whether or not notices [were provided] before the lease was terminated in the summer of 2024. . . . Based upon the testimony . . . , I find that the notices were sent. Some of the testimony by the defendant herself at least acknowledged with respect to the reminder notices . . . she did receive them.
>
> The only open issue in my mind was whether— because she testified that she did not get the HUD notice, the notice of the termination of subsidy, I have to decide . . . who I believe, and I find the tenant determined that she did not receive the . . . HUD notice, and . . . the property manager for the landlord testified that she did by certain means, including a cover letter. And I also find this to be credible based upon the fact that the parties continue[d] to have conversations after these notices were sent, leading up until October.
>
> So for that reason, the motion to vacate the default judgment is denied. I did not resolve the other issues because I find that those issues were resolved by [the first trial judge].

This appeal followed.

Before us, defendant does not challenge the propriety of the default judgment issued in March or the validity of the decision not to vacate it in May 2025, nor does she challenge the possible deficiencies in her HUD recertification. Rather, for the first time before us, defendant raises a single, nuanced issue and argues the March judgment should be reversed because Aspen's witness "purposefully mislead" the court during the plenary hearings by implying she was involved in delivering notices to the defendant on March 1, May 1, and June 1, 2024 when she only became employed on June 21, 2024.

We normally do not consider an issue that was not raised before the trial court because the parties have not fully developed it. See State v. Witt, 223 N.J. 409, 418-19 (2015); Neider v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973). This principle is based on the rationale that "the points of divergence developed in the proceedings before a trial court that defines the metes and bounds of appellate review." Witt, 223 N.J. at 419 (quoting State v. Robinson, 200 N.J. 1, 19 (2009)). "For sound jurisprudential reasons, with few exceptions '[we] will decline to consider questions or issues not properly presented to the trial court when an opportunity for such presentation [was] available.'" Ibid. (quoting Robinson, 200 N.J. at 20). We "will decline to consider questions or issues not properly presented to the trial court when an

A-2671-24

opportunity for such a presentation is available 'unless the questions so raised on appeal go to the jurisdiction of the trial court or concern matters of great public interest.'" Berardo v. City of Jersey City, 476 N.J. Super. 341, 354 (App. Div. 2023) (alteration in original) (quoting Neider, 62 N.J. at 234); Pressler & Verniero, Current N.J. Court Rules, cmt. 3 on R. 2:6-2 (2026).

Appellants must identify and fully brief any issue raised on appeal. R. 2:6-2(a). Parties must also make proper legal arguments, support them with appropriate record references, and provide the law. State v. Hild, 148 N.J. Super. 294, 296 (App. Div. 1977); see also Sackman v. N.J. Mfrs. Ins. Co., 445 N.J. Super. 278, 297-98 (App. Div. 2016). It is not our responsibility to search the record to substantiate a party's argument. Spinks v. Twp. of Clinton, 402 N.J. Super. 465, 474-75 (App. Div. 2008). Failure to meet these requirements is deemed a waiver. See, e.g., Gormley v. Wood-El, 218 N.J. 72, 95 n.8 (2014).

Based on these fundamental principles, we are compelled to decline consideration of defendant's single argument on appeal. Defendant's allegations of fraud and improper representations by counsel, which she now asks us to address, were not raised at the plenary hearings held before the trial court in this matter. For the first time on appeal, defendant asserts there was a

discrepancy between the testimony provided by Cintron in a similar case and the testimony in this case regarding Cintron's ability to serve the HUD reminder notices. However, defendant failed to present this issue for consideration, make any arguments, nor submit any evidence related to it, despite counsel having a full and fair opportunity to cross-examine Aspen's witness on this point.

Similarly, the testimony defendant now requests us to consider that is contained in her appendix was not introduced as evidence before the trial court and, therefore, was not preserved for appellate review. Failing to raise this issue at the trial level, the court was deprived of the opportunity to consider or rule on it.

Furthermore, defendant has not identified any specific error in the trial court's decision, as required, nor has she raised any legal issues nor cited any authority to support her legal contentions. Her arguments lack reference to relevant statutes, case law, or other legal precedents that would lend credibility or legal weight to her position.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hanley

Clerk of the Appellate Division

A-2671-24